UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLY McDERMOTT,

    Plaintiff,

-vs-

SCHOOLCRAFT COLLEGE,

    Defendant.

Case No.

Hon.

---

Barry S. Fagan (P34275)
Ryan O. Rosenberg (P84530)
FAGAN MCMANUS, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
bfagan@faganlawpc.com
rrosenberg@faganlawpc.com

---

## COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil action
arising out the transaction or occurrence
alleged in the complaint.

NOW COMES Plaintiff, HOLLY McDERMOTT, by and through her attorneys, FAGAN MCMANUS, P.C., and for her cause of action against the Defendant, states as follows:

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff, HOLLY McDERMOTT (hereinafter "Plaintiff" or "McDermott") is an individual residing in the City of Dearborn Heights, County

1

of Wayne, State of Michigan.

2. Defendant, SCHOOLCRAFT COLLEGE, (hereinafter "Defendant" or "Schoolcraft") is a Michigan Community College organized and operated under the Michigan Community College Act of 1966, and at all times pertinent hereto did conduct business in the City of Livonia, County of Wayne, State of Michigan.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental).

4. The amount in controversy is in excess of $75,000.00, exclusive of interests, costs, attorney fees, and punitive damages.

## **GENERAL ALLEGATIONS**

5. Plaintiff's date of birth is January 6, 1965.

6. Plaintiff began her employment with Schoolcraft in June 2005.

7. Plaintiff's job responsibilities during her entire tenure of employment with Defendant related to the coordination of food service at Schoolcraft events.

8. Initially, Plaintiff's position was a Shift Leader/Supervisor overseeing the union and on-call staff.

9. Subsequently, Plaintiff was promoted to the position of Food Service Supervisor and then to the position of Banquet and Catering

Coordinator for Food Service.

10. During this time frame, Plaintiff's annual performance evaluations were always excellent.

11. In April 2019, Plaintiff was given an overall rating of 4.9 out of 5 for her 2018/2019 Annual Evaluation.

12. In May 2021, Plaintiff was given an overall rating of 4.3 out of 5 for her 2020/2021 Annual Evaluation.

13. Plaintiff reported to the Director of Conference and Food Service, Brenda Durling ("Durling").

14. In June 2021, after Durling retired earlier that year, Heather Moore ("Moore") was hired for Durling's position.

15. At that time, the department name was changed from Food Service to Culinary Operations and Moore's title was Director of Culinary Operations.

16. Moore was approximately thirty-eight years old.

17. On August 31, 2021, Plaintiff's title was changed to Event Services Coordinator by Moore.

18. The job responsibilities with Plaintiff's new title were essentially the same as her previous responsibilities, but her compensation was changed from hourly to salary.

19. Subsequently, after being given the new title, Plaintiff was allegedly placed on probationary status by Moore for one year, although Plaintiff was never informed that she was placed on probationary status and it was not reflected in the system at Schoolcraft.

20. In February 2022, Moore terminated the Executive Chef of Culinary Operations, Aaron Cook ("Cook"), and replaced him with a substantially younger employee, Thomas Clark ("Clark"), who was approximately thirty-three years old.

21. Plaintiff and Cook previously reported directly to Moore and were peers, but after replacing Cook with Clark, Moore restructured the culinary operations team and required Plaintiff to report to Clark.

22. Plaintiff took an approved leave under the Family Medical Leave Act ("FMLA") for left hand surgery commencing March 3, 2022, with an anticipated return to work date of March 19, 2022.

23. On March 18, 2022, Plaintiff's physician approved Plaintiff's return to work with the restriction of no lifting, pushing or pulling greater than 5 pounds for two additional weeks.

24. Plaintiff was then approved by Schoolcraft to remain on FMLA leave for an additional two weeks, until April 4, 2022.

25. While on FMLA leave, Moore contacted Plaintiff and asked her

4

to come into the office on March 21, 2022, to order linens, schedule staff, and prepare sheets, and to attend a training workshop on March 23, 2022.

26. In addition, Moore asked Plaintiff to assist with a large plated event taking place on March 25, 2022.

27. Plaintiff complied with Moore's requests, working on March 21, 23, and 25, 2022, while on FMLA leave.

28. After returning from FMLA leave in April 2022, Moore gave Plaintiff a six-month probationary evaluation .

29. Plaintiff' was given an overall rating of 2.94 out of 5 on her six-month probationary evaluation, which was significantly lower than past appraisals. Plaintiff strongly disagreed with the evaluation indicating: "I was not aware the new title I was given in August 2021 would be linked to a probation status. To have my bonus reduced is extremely upsetting. I disagree with all of the 2's. I am an excellent employee and feel this is not a reflection of my value."

30. Plaintiff also spoke to Employee Relations Manager, Charlie Stein ("Stein"), Executive Director of Business Service and Talent Development, Rob Leadley, and Moore in April 2022, and reported that she felt that she was being set up to fail.

31. Plaintiff requested and was approved for an FMLA leave from

August 15, 2022, until August 22, 2022, because of her father's serious health condition. Her father passed away on August 30, 2023.

32. On October 8, 2022, Moore gave Plaintiff a twelve-month probationary evaluation, which Plaintiff strongly disagreed with.

33. Following the false twelve-month evaluation Plaintiff was informed that she was being placed on a Corrective Action Plan ("CAP"), based upon the evaluation.

34. Subsequently, Plaintiff submitted a detailed rebuttal to the performance evaluation as well as her objection and disagreement with the CAP.

35. Plaintiff took an approved FMLA leave for right hand surgery from December 13, 2022, through January 9, 2023.

36. Plaintiff returned to work on January 10, 2023.

37. After returning from FMLA leave, Plaintiff had her sixty-day review on the CAP in mid-January 2023, and was informed that a final CAP review would take place on February 17, 2023.

38. Plaintiff emailed Stein on February 16, 2023, requesting a transfer. Plaintiff did not receive a response.

39. Plaintiff attended a meeting with Schoolcraft General Counsel, Patrick Sturdy ("Sturdy"), Moore, and Stein on February 17, 2023, wherein

she was informed by Sturdy that her employment was terminated for allegedly failing to meet the requirements of the CAP.

40. Upon information and belief, Moore replaced Plaintiff with an employee in her mid-thirties.

41. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 30, 2023, against Schoolcraft College, alleging age discrimination.

## COUNT I
## VIOLATION OF THE AGE DISCRIMINATION
## IN EMPLOYMENT ACT: AGE DISCRIMINATION

42. Plaintiff incorporates paragraphs 1 through 41 above as if specifically repeated herein.

43. At all times pertinent hereto Plaintiff was qualified for protection against age discrimination under the Age Discrimination in Employment Act of 1967, as amended (hereinafter referred to as the "ADEA").

44. Pursuant to the ADEA, specifically 29 U.S.C. § 623(a), it shall be unlawful for an employer:

    a. To fail or refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age.

45. Defendant is an employer within the meaning of the ADEA.

46. Defendant discriminated against Plaintiff because of her age and

violated the ADEA in the following particulars:

    a.    Changing Plaintiff's reporting structure to report directly to a younger employee;

    b.    Placing Plaintiff on probationary status after changing her title, without a legitimate basis and without informing Plaintiff;

    c.    Giving Plaintiff poor performance evaluations which were inaccurate and contained false representations;

    d.    Placing Plaintiff on a Corrective Action Plan without a legitimate basis;

    e.    Treating Plaintiff differently than similarly situated younger employees;

    f.    Terminating Plaintiff's employment;

    g.    Replacing Plaintiff with a substantially younger employee;

    h.    Other acts of age discrimination to be determined through discovery.

47.    As a direct and proximate result of Defendant's discriminatory conduct towards Plaintiff, Plaintiff has suffered and will in the future suffer damages including, but not limited to:

    a.    Loss of wages and earning potential;

    b.    Loss of employee benefits;

    c.    Loss of promotional opportunities;

    d.    Other damages to be determined.

48.    The above-referenced discriminatory conduct by Defendant

towards Plaintiff was willful and, as a result, Plaintiff is entitled to liquidated damages pursuant to 29 U.S.C. § 626(b).

49. Plaintiff is also seeking equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendant, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated damages and attorney fees. Plaintiff also seeks equitable relief including back-pay, front-pay, or other equitable relief the Court deems appropriate.

### COUNT II
### VIOLATION OF THE ELLIOTT-LARSEN
### CIVIL RIGHTS ACT: AGE DISCRIMINATION

50. Plaintiff incorporates paragraphs 1 through 49 above as if specifically repeated herein.

51. At all times relevant hereto, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of the "ELCRA".

52. The ELCRA prohibits, among other things, discrimination based on age.

53. Notwithstanding the duties owed to Plaintiff pursuant to the ELCRA, Defendant violated the statute and discriminated against Plaintiff

because of her age in the following particulars, including, but not limited to:

    a.    Changing Plaintiff's reporting structure to report directly report to a younger employee;

    b.    Placing Plaintiff on probationary status after changing her title, without a legitimate basis and without informing Plaintiff;

    c.    Giving Plaintiff poor performance evaluations which were inaccurate and contained false representations;

    d.    Placing Plaintiff on a Corrective Action Plan without a legitimate basis;

    e.    Treating Plaintiff differently than similarly situated younger employees;

    f.    Terminating Plaintiff's employment;

    g.    Replacing Plaintiff with a substantially younger employee;

    h.    Other acts of age discrimination to be determined through discovery.

54.    As a direct and proximate result of Defendant's discriminatory conduct towards Plaintiff, Plaintiff has suffered and will in the future suffer damages, including, but not limited to:

    a.    Loss of wages and other compensation, both in the past and in the future;

    b.    Loss of employee benefits;

    c.    Loss of promotional opportunities;

    d.    Loss of professional esteem and consequent damage to Plaintiff's professional career;

  e. Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage, and disappointment;

  f. Exemplary damages;

  g. Other damages to be determined.

55. Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendant, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees. Plaintiff also seeks equitable relief including back-pay, front-pay, or other equitable relief the Court deems appropriate.

## COUNT III
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

56. Plaintiff incorporates paragraphs 1 through 55 above as if specifically repeated herein.

57. At all times pertinent hereto, Plaintiff was an eligible employee within the meaning of the FMLA, as:

  a. Plaintiff was employed by Defendant for a time period greater than 12 months;

  b. During the aforementioned 12 months, Plaintiff worked greater than 1,250 hours.

58. Defendant is an employer within the meaning of the FMLA.

59. Pursuant to the FMLA, Plaintiff was entitled to take up to 12 weeks of FMLA leave as a result of her serious health condition or the serious health condition of a family member.

60. Plaintiff took approved FMLA leaves in March 2022, August 2022, and December 2022.

61. Plaintiff was given poor performance evaluations after returning from FMLA leaves taken in March and August 2022, and was terminated on February 17, 2023, after her last FMLA leave.

62. Defendant violated the FMLA in the following particulars, including, but not limited to:

    a. Interfering with Plaintiff's right to take FMLA leave;

    b. Retaliating against Plaintiff for taking FMLA leave;

    c. Terminating Plaintiff's employment on February 17, 2023;

    d. Other violations which are yet to be discovered.

63. Defendant willfully violated the FMLA in that it knew that such conduct was prohibited under the statute or acted in reckless disregard of whether such conduct was prohibited.

64. Pursuant to the FMLA, Plaintiff is entitled to:

    a. All wages, salary, employment benefits, or other compensation denied or lost by reason of the violation of the FMLA;

      b.      Interest;

      c.      Liquidated damages;

      d.      Attorney fees;

      e.      Other damages/remedies available under the law;

      f.      Appropriate equitable relief.

WHEREFORE, Plaintiff prays for judgment against Defendant, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees. Plaintiff also seeks equitable relief; including back-pay, front-pay, or other equitable relief the Court deems appropriate.

Respectfully submitted,

FAGAN MCMANUS, P.C.

By: /s/ *Barry S. Fagan*
     Barry S. Fagan  (P34275)
     Attorney for Plaintiff
     25892 Woodward Avenue
     Royal Oak, MI  48067-0910
     (248) 542-6300

Dated:  December 20, 2023     bfagan@faganlawpc.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLY McDERMOTT,

    Plaintiff,

-vs-

SCHOOLCRAFT COLLEGE,

    Defendant.

Case No.

Hon.

---

Barry S. Fagan (P34275)
Ryan O. Rosenberg (P84530)
FAGAN MCMANUS, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
bfagan@faganlawpc.com
rrosenberg@faganlaw.com

---

## **PLAINTIFF'S DEMAND FOR JURY TRIAL**

NOW COMES the above-named Plaintiff, by and through her attorneys, Fagan McManus, P.C., and hereby demands trial by jury on the above matter.

          FAGAN MCMANUS, P.C.

          By: /s/ *Barry S. Fagan*
             Barry S. Fagan (P34275)
             Attorney for Plaintiff
             25892 Woodward Avenue
             Royal Oak, MI  48067-0910
             (248) 542-6300

Dated:  December 20, 2023          bfagan@faganlawpc.com